127

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re:

Joseph Constant

          Plaintiff

vs

Ms Shalina D Kumar (P56595)

        Defendant

---

**Case:2:15-cv-11926**
**Judge: Cox, Sean F.**
**MJ: Whalen, R. Steven**
**Filed: 05-28-2015 At 09:06 AM**
**CMP CONSTANT V KUMAR (EB)**

**RELATED CASES:**

State of Michigan, Supreme Court Case No: 150846

State of Michigan Court of Appeals, Case No. 317976

State of Michigan 6th Circuit Court of Oakland County, Case No 2013-132055-CH

---

**COMPLAINT OF CIVIL RIGHTS AND DUE PROCESS RIGHTS VIOLATIONS BY STATE OF MICHIGAN JUDGE SHALINA D KUMAR (P56595) AND FOR MONETARY COMPENSATIONS FROM MS KUMAR**

**Joseph Constant,**
In pro per
49 Highland Drive
Bloomfield Hills, Michigan 48302-0355
Tel: 248-857-9000
email: constant@ameritech.net

1

# Table of Contents

INDEX OF AUTHORITIES.................................................................................5

PREAMBLE.....................................................................................................7

INTRODUCTION...............................................................................................8

PARTIES........................................................................................................15

VENUE..........................................................................................................17

JURISDICTION...............................................................................................17

FACTS - BACKGROUNDERS.............................................................................18

    DTE ELECTRIC. A.K.A. DTE ENERGY, DETROIT EDISON ("DTE"):......................18

    ATTORNEY LELAND PRINCE (P30686) ("PRINCE")...................................20

    DTE EMPLOYEE AND SUPERVISOR, MR. JAMES M Hammond ("Hammond").....21

    MR JOSEPH CONSTANT ("CONSTANT"....................................................22

FACTS - HISTORY OF DTE ACTIVITIES AT, OR NEAR MY PROPERTY SINCE 11/12/1991
.....................................................................................................................23

THE DTE LAWSUIT........................................................................................33

MY RESPONSES TO THE DTE LAWSUIT............................................................36

THE EVIDENCE AGAINST THE DTE COURT CLAIMS BY DOCUMENTS........................38

THE EVIDENCE AGAINST DTE BY PLAIN ENGLISH.............................................43

THE EVIDENCE AGAINST DTE, BY DTE CONDUCT AND DTE IN-ACTIONS FROM
11/12/1991 TO 2/4/2013................................................................................49

THE AFFIDAVIT OF MR JAMES M HAMMOND WAS A DELIBERATELY FALSIFIED
OATH, AND WAS OF CRIMINAL CONDUCT.........................................................56

THE ORDER OF PRELIMINARY INJUNCTION WAS ERRONEOUSLY ISSUED. AND
FRAUDULENTLY REQUESTED AND OBTAINED BY DTE.....................................59

THE DTE MOTION FOR VOLUNTARY DISMISSAL (DOCKET/EXHIBIT 74) WAS A
COMPLETE FACADE, MASQUERADE, CHARADE, MASK, CLOAK, VEIL, VENEER
AND COVER...................................................................................................66

THE VIOLATIONS CREATED BY THE DTE LAWSUIT............................................71

    COUNT 1 – VIOLATION: CRIMINAL CONDUCT IN THE AFFIDAVIT OF MR JAMES
    M HAMMOND (EXHIBIT 7, pp10-11).....................................................71

    COUNT II– VIOLATION: EQUAL PROTECTION CLAUSE OF THE UNITED STATES

CONSTITUTION....................................................................................................74

COUNT III-- VIOLATION: MALICIOUS PROSECUTION..................................76

COUNT IV. 42 USC § 1983 - DUE PROCESS IN LAW VIOLATIONS BY STATE OF
MICHIGAN OAKLAND COUNTY 6TH CIRCUIT COURT JUDGE SHALINA D
KUMAR (P56595)...............................................................................................83

COUNT V. -- VIOLATION: FOURTH AMENDMENT VIOLATIONS................................90

COUNT VI. – VIOLATION: FIFTH AMENDMENT VIOLATIONS....................................91

COUNT VII. -- VIOLATION: 14TH AMENDMENT VIOLATIONS....................................91

DISCUSSIONS AND ARGUMENTS IN SUPPORT OF COUNT V, VI, VII VIOLATION: THE
DTE INVASION OF MY PRIVACY, SEARCH, SEISURE, MUTILATION AND
DESTRUCTION OF MY, PLANT PROPERTIES BY ORDER OF THE STATE OF
MICHIGAN..........................................................................................................91

IN THE MICHIGAN COURT OF APPEALS AND THE MICHIGAN SUPREME COURT.....92

DISCERNING THE FRAUD IN THE DTE COURT FILINGS AND HOW IT WAS SUPPOSED
TO HAVE WORKED, AND UNFOLDED...............................................................94

FINDING AUTHORITY FOR ASSESSING AT LEAST THE $1,000 MILLION IN
MONETARY DAMAGES, PUNITIVE DAMAGES BEING SOUGHT FROM DTE ELECTRIC
FOR MALICIOUS PROSECUTION.......................................................................99

CONCLUSION....................................................................................................102

RELIEF REQUESTED.........................................................................................111

INDEX OF EXHBITS 1........................................................................................113

INDEX OF EXHIBITS 2........................................................................................117

....................................................................................................................92

# INDEX OF AUTHORITIES

## CASES

*Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220 (5th Cir. 2013 ……….…….……..: 95

*Gray v. CONESTOGA TITLE COMPANY*, No. 1: 11-cv-01575-JMS-DKL (S.D. Ind. Jun. 5, 2012). ……………………….……… ……………………………………………….……...……….….. 97

*Thurman v. Village of Homewood,* 446 F.3d 682, 687 (7th Cir. 2006) …………......…......…... 97

Colo. Rev. Stat. Ann. § 18-4-407 [West 1996]) ……….….….………….……….…….…….... 75

*United States v. Jacobsen,* ………………………………………………….……….…….…..... 91

## STATUTES

MCL 560.190 ………………………….……...…......……....... 10, 34, 35, 46, 65, 93, 100, 113

MCL 750.423, 424, 425, 750.426   ……………….…..……………………....……..... 70, 73, 89, 110

MPSC 460.3505 ……………….……………………………………........10, 35, 65, 93, 93, 100, 113

42 USC § 1983 - Civil Rights …………………………….…...…….…......... 8, 8, 14, 80, 97, 97, 170

4th. Amendment of the US Constitution Due process Clause of the United States ……………………………… ……………….………….……….…………...…. 8, 14, 14, 89, 73, 103

5th. Amendment of the US Constitution Due process Clause of the United States … ……………………………… ……………….………….……….…………..…….…........ 8, 14, 14, 89, 93

14th. Amendment of the US Constitution Due Process Clause of the United States ……………………………… ……………….………….……….…………...….…...... 8, 14, 14, 89, 103

28 USC §1331 – Federal Question …...….……….……….…………….……...…………….….. 17

42 U.S.C. § 1983   …………………….………….……….…...…...……………………….…..... 17

## OTHER AUTHORITIES

MCR 2.114(D), (E), (F) ………… …………………………………………13, 71, 72, 93, 114

MCR 2.114(E) ……………...….…………………………………………………………… 93

MCR 2.114(F) ………………...…… ……………………………...……………………….. 93

MCR 3.310(A) …………………………………………………………………….. 61, 119

MCL 560.190(D) ……………………………..……………… 10, 35, 36, 47, 67, 96, 97, 104, 117

MPSC C5.4 …………………………………….……..…. 10, 24, 24, 36, 50, 67, 96, 97, 104, 117

SECTION 4 T02N, R10E …………………………………… 9, 20, 67, 71, 103, 103, 114, 115, 118

Legal Description and Plat of Bloomfield Highlands Subdivision …...…………………………..

Legal Description and Plat of Hadsell's Addition to Bloomfield Highlands Subdivision
…………………………………… ……………………………………….……… ……………

LEGAL DESCRIPTION AND PLAT OF LOT 4, HADSELL'S ADDITION TO BLOOMFIELD
HIGHLANDS SUBDIVISION……………………….……………………….…..………… 23, 115

DTE's 1912 Eastern Michigan Edison Company Right of Way Agreement
…………………………………………………..………... 46, 46, 47, 47, 47, 48, 84, 96, 96, 96, 105

The 9th Edition of Black's Law Legal Dictionary - DEFINITIONS OF A SECTION ………... 44

The U.S. Government website, http://nationalatlas.gov/articles/boundaries/a_plss.html#thre -
DEFINITIONS OF A SECTION …. ………………………………………………….……… 44

http://legaldictionary.lawin.org/section/ - DEFINITIONS OF A SECTION ………….…….. 44

http://www.thefreedictionary.com/section - DEFINITIONS OF A SECTION ………….…….. 44

http://dictionary.reference.com/browse/section - DEFINITIONS OF A SECTION …………... 44

www.merriam-webster.com/dictionary/section - DEFINITIONS OF A SECTION ……...…..... 45

http://en.wikipedia.org/wiki/Section_(United_States_land_surveying) - DEFINITIONS OF A
SECTION ………………………………………………………………………….…..……... 45

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In Re:

Joseph Constant

        Plaintiff

vs

Ms  Shalina D Kumar (P56595)

        Defendant

Case No:

Judge

**RELATED CASES:**

State of Michigan, Supreme Court Case No: 150846

State of Michigan Court of Appeals, Case No. 317976

State of Michigan 6th Circuit Court of Oakland County, Case No 2013-132055-CH

# COMPLAINT OF CIVIL RIGHTS AND DUE PROCESS RIGHTS VIOLATIONS BY STATE OF MICHIGAN JUDGE SHALINA D KUMAR (P56595) AND FOR MONETARY COMPENSATIONS FROM MS KUMAR

**To the Honorable Judge and Jury of Said Court:**

Plaintiff, Joseph Constant, in pro per states as follows:

## PREAMBLE

1.  **THE ROLE OF THE COURTS:** The website http://www.cscja-acjcs.ca/role_of_courts-en.asp?l=4 states the Role of the Court as:

    "The justice system is the mechanism that upholds the rule of law. Our courts provide a forum to resolve disputes and to test and enforce laws in a fair and rational manner. The courts are an impartial forum, and judges are free to apply the law without regard to the government's wishes or the weight of public opinion. **Court decisions are based on what the law says and what the evidence proves**; there is no place in the courts for suspicion, bias or

7

favoritism. This is why justice is often symbolized as a blindfolded figure balancing a set of scales, oblivious to anything that could detract from the pursuit of an outcome that is just and fair. "

## INTRODUCTION

2. Based on the above PREAMBLE, The Courts of the United States are presumed, to not be, the weapons of Choice, that very rich United States Corporations like the $26 billion dollar DTE Energy Company, prefer to use as the weapons of choice, a pack of lies, a Falsified Affidavit by one of its employees, unscrupulous and unethical lawyers, and $150 and $20 Complaint and Motion filing fees, to set-off, perfect and complete a deliberate State sanctioned(Michigan Court Order) theft of Real Estate Easements Rights from an innocent citizen of the State, to commit a TORT, and create contraventions of the citizen's Constitutional Rights under 42 USC, § 1983, the 4th, 5th. and 14th. Amendment of the U.S. constitution,  Equal Protection Clause and the Due Process clause of the United States Constitution and to extent's the State of Michigan Constitution.

3. In a  bid to rob, and **steal** from me, and gain control of Property Easements Rights  for its line clearance activities without paying me, for it, and with a State of Michigan Court Order, DTE Electric, a.k.a. DTE Energy, a.k.a. Detroit Edison, that was worth $26 billion and had made $3.1 billion in 2011-2012 profits, and had enough money to had paid its CEO, Mr Gerard Anderson $10 million in 2012 compensations,  (see **EXHIBIT 149, 150**), went for the kill, and successfully prosecuted me maliciously in the State of Michigan  6th Circuit Court of Oakland County, and **failed,** and succeeded in getting the State of Michigan to create the case laws that violated my civil Rights under 42 U.S.C. § 1983, 4th, 5th, 14th Amendment of the U.S. Constitution, and created the basis, and accessorized the conditions that impelled upon FIVE Michigan Law Enforcements units to violate my Civil Rights to Equal Protection , a Federal and State constitutional Civil

Rights law. Hence this complaint seeks from the United States Court as follows **(1)** A Judgment of monetary compensations from DTE Electric for Maliciously prosecuting me, without probable cause **(2)** A Writ of Mandamus against Michigan State Attorney General, Oakland County Michigan Prosecutor, Oakland County Michigan Sheriff, Farmington Hills City, Michigan Manager, and Detroit City Michigan Mayor to investigate, and charge Mr James M Hammond for the criminal conduct in his Affidavit, which is demonstrated in this complaint-brief to exist beyond reasonable doubt **(3)** Money Judgment against The State of Michigan Judge Shalina D Kumar (P56595) for Violating my Civil Rights to Due Process, under 42 USC § 1983

4. On 2/5/2013, DTE did not have, **ANY** conditions of untrimmed trees, unmaintained equipment, uncompleted line clearance[1], uncompleted equipment maintenance, unsafe, dangerous, jeopardized, threatened, degraded electricity services, reliably, and power quality levels, on its circuit, serving my house, 49 Highland Drive, Bloomfield Hills, Michigan 48302-0355, and not one life of **ANY** of its customers, including mine was in danger of mortal termination by death, as a result of any action or conduct of mine against DTE. And this are so, because **EXHIBITS 98, 99, 143, 145, 200** says so and **EXHIBITS 125, 125.1, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140,** also says so by conduct of DTE and DTE staff, Mike Sol, Gary Kravitz, James M Hammond.

5. On 2/5/2013, the legal description of my property is **NOT** Section 4, T02N, R10E, and is not located in the 1912 platted Bloomfield Highlands subdivision **(EXHIBIT 101)**. but is, in the 1920 platted Hadsell's Addition to Bloomfield Highlands Subdivision.[2] **(EXHBIT 102).**

---

1 LINE Clearance is the process of cutting, trimming and removing trees, branches and limbs from around Public utility power lines. See also EXHIBITS 162, 164, 165, 168, 169, 170

2 The common word, "**Bloomfield**" used in the two subdivisions names refers to the popular name for Bloomfield Township in 1912 and in 1920.

**Plain English says so.**

6.  The DTE 1912 Right of Way agreement (**EXHIBIT 111**) had no authority or jurisdiction over the subdivision of Hadsell's Addition to Bloomfield Highlands, where my property of 49 Highland Drive, Bloomfield Hills, MI 48302-0355 is located and DTE's history of activities over the 1912 platted Hadsell's Addition to Bloomfield Highlands does not port-over, carry-over as the same as history of activities over any other subdivision including the 1920 plated Bloomfield Highlands Subdivision to Bloomfield Highlands Subdivision. **Plain English says so.**

7.  On 2/5/2013 The DTE power lines at the west side of my property (**EXHIBITS** 108) was not there by DTE exercise of authority under its 1912 Right of Way Agreement (**EXHIBIT 111**) but by whatever agreement that allowed for the extension of electricity services to the Hadsell's Family Farm house, in the Hadsell's Family Farm, that was not part of the 1912 platted Bloomfield Highlands subdivision and it could not be., because one is a farm, the other was not, and was and is a subdivision.

8.  On 2/5/2013 **MPSC 460.3505** [3], **C5.4** [4], and **MCL 560.190(d)** [5] DID NOT have the authority to grant easements rights to DTE. The plain language of the State regulations and laws says so.

---

[3]  **MPSC 460.3505**  "Each utility shall adopt a program of maintaining adequate line clearance through the use of industry-recognized guidelines. A line clearance program shall recognize the national electric safety code standards that are adopted by reference in R 460.811 et seq. The program shall include tree trimming."

[4]   **MPSC C5.4**  "As a condition of taking service, authorized employees and agents of the Company shall have access to the customer's premises at all reasonable hours to install, turn on, disconnect, inspect, read, repair or remove its meters, and to install, operate and maintain other Company property, and to inspect and determine the connected electrical load. Authorized employees and agents shall carry identification furnished by the Company and shall display it upon request..  In a commercial building or apartment complex where the meters are installed on the inside of the building and are located in a locked meter room, a key will be provided to the Company. Failure of the customer to comply with the above may result in termination of service after due notice."

[5]  **MCL 560.190(d)** "The public utilities shall have the right to trim or remove trees that interfere with their use of easements."

9.  Between 11/12/1991 and 2/5/2013, No one or any conditions have ever prevented, barricaded, impeded or Kept DTE out of my premises for any reasons whatsoever. There are no from or side fences here and there are no guard dogs living on the premises

10. However, **on 2/5/2015 there was a state of Failed negotiation** between DTE and myself that would have seen DTE receive an easement for line clearance at the west side of my property, from me, at a cost of $16,000, some Arborvitaes planted,  some trees relocated and an easement which I had thought at the time, that DTE owned at the east side of my property[6], vacated by DTE (see **EXHIBITS 139, 140, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138)**.

11. In a bid to steal property Easements Rights over my Property and to rob me of rights over my property at 49 Highland Drive, Bloomfield Hills, Michigan 48302-0355 USA,  without paying me, cash for it, by **using using the Force of the State of Michigan and it orders as the preferred weapon of Choice, 1960's era Civil Rights product,**  Howard University graduate, Wolverine Bar and NAACP member, Michigan Bar licensed attorney for more than 34 years and since 1979, Mr Leland Prince, **wrote a <u>script</u>,** and filed it in the State of Michigan 6th Circuit Court of Oakland County, Michigan, Case No 2013-132055-CH, *DTE Electric v Joseph Constant* and alleged several falsified wrongs that I had supposedly done DTE, that have caused it to have uncompleted line clearance, unmaintained equipment, jeopardized, degraded, threatened, harmed, jeopardized, harmed electricity services and degraded electricity reliability levels, and placed the lives of hundreds of its customers facing the immediate danger of the finality of irreversible deaths beyond any remedies of any law. It (DTE and Prince) requested the State of Michigan to grant it **(1)** the immediate

---

6   DTE no longer had any easements at the east side of my property, lost by lack of use for 15 years and by the the same laws that authorizes prescriptive easements. In addition the east-side of my property has long been abandoned and vacated, and assigned fully to me and the adjoining property to the east of mine, or 41 Highland Drive, Bloomfield Hills, Michigan 48302-0355

Judgment of Prescriptive Easement over my property, **(2)** a Permanent Injunction against me, to protect its henceforth use and enjoyment of the easement and **(3)** an immediate Preliminary Injunction against me, because the time, it will take the courts to resolve the matter will be too long and the inevitable irreversible harm would have issued.

12. DTE supported its court claims with **the Sworn Affidavit of Mr James M Hammond**, and employee of no less than 30 years (see **EXHIBIT 7, pp10-1 and EXHIBIT 201 – Hammond DTE profile**). The Affidavit was deliberately and purposefully laced with falsehoods, and malicious contents, and I reported the matter to the Michigan Law Enforcements Units that has jurisdictions and authority over the territories were the Affidavit was manufactured, assembled with other documents and the city and County, where the Affidavit was presented as authority to a State of Michigan Court as as Evidence and Authority, upon which the State of Michigan Oakland County, 6th Circuit Court, in Case No 2013, *DTE Electric v. Joseph Constant,* would make its rulings. The law enforcements units did nothing.

13. On 3/27/2013 DTE was granted an order of Preliminary Injunction and on 5/23/2013 DTE executed the Order on my property, to search for my plants and tree properties and then cut them, and removed them.

14. On 8/1/2013 DTE Affiant, Mr James M Hammond was subpoenaed to appear in Court for in court deposition, and produce several named official DTE records and documents that must substantiate or deny credibility to the DTE claims and representations against me, to which Hammond had sworn to, as the truth in his Affidavit, of 2/26/2013 (see **DOCKET/EXHIBIT 7, pp10-11)** which is the basis and foundation of the authority upon which State of Michigan Judge Shalina Kumar (P56595) relied upon to issue the Order of

Preliminary Injunction (see **DOCKET/EXHIBIT 19**).

15. On 8/6/2013, **I praeciped 13 previously filed Motions for hearings on 8/14/2013**. The Motions (see **DOCKET/EXHIBITS 10, 21, 23, 26, 27, 29, 30, 31, 32, 33, 34, 57, 59, 76**) called for in-court depositions of DTE CEO, Gerard Andersen, DTE Board of Directors, DTE Employees, Gary Christensen, Darcy Stein, Robert Blacksher, Peggy Sorvalla, and for DTE to produce, for inspection, examination, copying of several named official documents, reports, records, computer data, that will either <u>substantiate</u> or <u>destroy **ANY** credibility</u> in the DTE Attorney Leland Prince-signed and Court-filed complaints and the Sworn Affidavit of Mr James M Hammond, about the DTE court claims.

16. Instead of allowing Hammond to take the stand and face the certainty of criminal investigation charges and inevitable charges and consequences, DTE attorney, Leland Prince filed a motion for exit, abandoning the ONLY TRUE REASON, of why he went to Court in the first place, which is to get a **(1) Judgment of Prescriptive Easement over my property** and unnecessary lesser inferior evils of **(2)** A Permanent order of In-injunction against me, to allow DTE enjoy the easement problem-free.

17. **DTE failed to prevail in the 6th Circuit in its lawsuit bid and campaign to gain and seize control of easement rights over my property with a Michigan Court Order. I.E DTE is the one that lost.** In short then, DTE prosecuted me maliciously in a Michigan courthouse for economic gains, despite its $26 billion worth. The <u>DTE Malicious Court prosecution</u> against me, with its Attorney Leland Prince's MCR 2.114(D) violating contents and the Affidavit of DTE Employee, Mr James M Hammond with its <u>criminal nature</u>, have led to the below listed violations and breach of my Constitutional Rights:

    **(1.)**    Malicious Prosecution of Me, Mr Joseph Constant by DTE

**(2.)**   Fourth Amendment violation

**(3.)**   Fifth Amendment violation

**(4.)**   Fourteenth Amendment violation

**(5.)**   Due Process violation

**(6.)**   42 U.S.C. § 1983, violation

18. Pursuant to the statutes, laws, doctrines, listed below, Plaintiff Joseph Constant is seeking the corresponding reliefs against the corresponding parties for the corresponding violations and as listed in the **TABLE** below:

| GROUPS | LEGAL AUTHORITIES | DEFENDANTS | RELIEFS |
|---|---|---|---|
| **1.** | TORT<br><br>Malicious Prosecution | DTE Electric, a.k.a DTE Energy, a.k.a Detroit Edison<br><br>Mr James M Hammond | A Judgment of $1,000 million against DTE Electric and Mr James M Hammond for Malicious prosecution, accessorizing, instigating, inspiring and engineering the violation of my civil rights by State of Michigan government Law Enforcement officials and loss of property, invasion of my privacy, loss of income, wages, upset, and for punitive damages |
| **2.** | Equal Protection<br><br>Article 1 § 2 Equal protection; discrimination, Provision of the State of Michigan Constitution of 1963 | Michigan State Attorney General, Bill Schuette<br><br>Oakland County Prosecutor, Jessica R Cooper<br><br>Oakland County Sheriff, Michael J. Bouchard | A Writ of Mandamus for the investigation and criminal prosecution of Mr James M Hammond for the deliberate falsifications and Criminal |

| | | | |
|---|---|---|---|
| | 4TH., 5TH., 14TH., Amendments of the U.S. Constitution | City of Farmington Hills Michigan, Manager, Steve Brock City of Detroit, Manager Mike Duggan | Conduct in Mr Hammond's Affidavit of 2/26/2013, and providing the weapon of authority for the State of Michigan erroneously issued 3/27/2013 Order of Preliminary Injunction |
| 3. | 42. USC § 1983 Due Process Equal Protection Article 1 § 2 Equal protection; discrimination, Provision of the State of Michigan Constitution of 1963 4TH., 5TH., 14TH., Amendments of the U.S. Constitution | Judge M Shalina D Kumar (P56595) | A Judgment of $10 Million Dollars for violations of my Due Process Rights. |

19. Costs and attorney fees will also be sought against <u>all three Groups of Defendants</u> pursuant to the Equal Access to Justice Act, 5 USC. §504, and 28 USC §2412(d), *et. Seq*

## PARTIES

20. The **Plaintiff**, Mr Joseph Constant is a dual citizen of the United States and Federation of Nigeria. He resides at 49 Highland Drive, Bloomfield Hills, Oakland County Michigan 48302-0355.

21. The **Defendants Group ONE** are:

    **(1.)**  DTE Electric a.k.a DTE Energy, a.k.a Detroit Edison Company
        One Energy Plaza
        Detroit, Michigan 48226
        Phone: (313) 235-4000

   **(2.)**   Mr James M Hammond
            Regional Supervisor NWPD
            Detroit Edison, a Subsidiary of DTE Energy
            Northwest Region
            37849 Interchange Drive
            Farmington Hills, MI 48335
            Phone: 248.427.2982
            Fax:
            Email: hammondj@dteenergy.com

**22.** **The Defendants Group TWO are:**

   **(1.)**   Michigan State Attorney General, Mr Bill Schuette
            G. Mennen Williams Building, 7th Floor
            525 W. Ottawa St.
            P.O. Box 30212
            Lansing, MI 48909
            Phone:  (517) 373-1110
            Fax: (517) 373-3042
            Email: miag@michigan gov

   **(2.)**   Oakland County Prosecutor,  Ms Jessica R Cooper.
            West Wing - Building 14E
            1200 North Telegraph Road
            Pontiac, Michigan, USA 48341-0461
            Phone:(248) 858-0656
            Fax: (248) 975-4265
            Email: info@oaklandprosecutor.org

   **(3.)**   Oakland County Sheriff Michael Bouchard.
            Oakland County Sheriff's Office
            1200 North Telegraph Road Building 38E
            Pontiac, Michigan. USA, 48341-1044
            Phone: 248-858-5000
            Fax: 248-858-1806
            Email: ocso@oakgov.com

   **(4.)**   City of Farmington Hills Michigan, Manager, Mr Steve Brock.
            City Manager's Office
            31555 W. Eleven Mile Road
            Farmington Hills, MI 48336
            Phone: (248) 871-2500
            Fax: (248) 871-2501
            Email: sbrock@fhgov.com

(5.)   City of Detroit, Manager Mr. Mike Duggan.
2 Woodward Avenue. Suite 1126
Detroit, MI 48226
Phone: 313.224.3400
TTY: 711 or (800) 649-3777
Fax: 313.224.4128
Email: emailmayorduggan@detroitmi.gov

23. The **Defendant Group THREE are:**

(1.)   Ms Shalina D Kumar (P56595)
Circuit Court Judge
6th Circuit Court
1200 N Telegraph Rd Ste 1C
Pontiac. MI 48341
Phone: (248) 858-5280
Fax: (248) 975-9784
Michigan Licensed: 06/06/1997

## VENUE

14   Venue is proper in this Court, pursuant to 28 U.S.C.§ 1391(e), in that Plaintiff may request a

hearing on the matter in the district where he resides.

## JURISDICTION

15   This Court has Jurisdiction under **(1)** The Doctrine of TORT, a Common Law of the United

States, **(2)  28 USC §1331 – Federal Question** [7], since this Court has the power to enforce

the Constitution of the United States: **(3) The Fourth Amendment of the U.S. Constitution**

[8] **(4)** The Fifth Amendment to the U.S. Constitution[9], **(4)** The Fourteenth Amendment, **(5)**

---

7     **28 USC § 1331 reads:** "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"

8     The Fourth Amendment to the United States Constitution provides that: ""The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and **the persons or things to be seized.**"

9     **The Fifth Amendment to the U.S. Constitution** reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, **liberty, or property, without due process of law**; nor shall private property be taken for public use, without just" compensation.

Section 1, of the U.S. constitution (The Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution) [10] and **(6)** Article 1 § 2 Equal protection;

discrimination, Provision of the State of Michigan Constitution of 1963 [11] **(7) The Due**

Process Clause of the U.S. Constitution. (8) **42** U.S.C. § 1983

## FACTS - BACKGROUNDERS

## DTE ELECTRIC. A.K.A. DTE ENERGY, DETROIT EDISON ("DTE"):

16  DTE is Michigan Corporation valued at $26 Billions. It made $2.5 billions in 2011 and $618

millions in 2012 profits (see **EXHIBIT 184**), It paid its CEO Gerard M Anderson $9.33

millions in compensations in 2012 (see **EXHIBIT 150**).  The website

https://en.wikipedia.org/wiki/DTE_Energy  (**EXHIBIT 184**) says the following of DTE:

> "In December 2011, the non-partisan organization Public Campaign criticized
> DTE Energy for spending $4.37 million on lobbying and not paying any taxes
> during 2008-2010, instead getting $17 million in tax rebates, despite making a
> profit of $2.5 billion."

17  DTE is a regulated company, and is required to, and does keep extensive records regarding

customer contacts, line clearance and equipment maintenance, refused work records, and it

files annual or regular Electricity Reliability Reports with MPSC (See **EXHIBITS 185**).

18  DTE Electric ("DTE") has electric power lines running along the south border of my

property under the Authority of a 1912 Right of Way Agreement granted to DTE 's

predecessor, The Eastern Edison Company on 10/24/1912 (see **EXHIBIT 111**) and along the

---

10      **The Fourteenth Amendment, Section 1, of the US constitution reads:**
      All persons born or **naturalized** in the United States, and subject to the jurisdiction thereof, are
citizens of the United States and of the State wherein they reside. No State shall make or enforce any law
which **shall abridge the privileges or immunities of citizens of the United States**; nor shall any State
deprive any person of life, **liberty,** or **property, without due process of law; nor deny to any person within
its jurisdiction the equal protection of the laws.**

11      Article 1 § 2 Equal protection; discrimination, Provision of the State of Michigan Constitution of
1963 read:
"No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of
his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or
national origin. The legislature shall implement this section by appropriate legislation"

west borders of my property. The Authority for the existence of this DTE power lines is unknown, but presumed to furnish electricity services to the Hadsell's Family farm house.

19  MPSC (The Michigan Public Service Commission) provides DTE with its annual vegetation management funds. In the MPSC case **U-12270** and **U-16065**, DTE was ordered to file annual Electricity Reliability reports. (See **EXHIBITS 200**). DTE have since then filed annual electricity Reliability Reports, and these reports show that **NO** deflated, degraded, harmed,, harmful, jeopardized, Electricity Services, supply, distribution or Reliability levels on its Bloomfield Township circuit **BLMFD8882,** and the circuit running through my property at 49 Highland Drive, Bloomfield Township, MI 48302-0355 ever existed. DTE has electricity service poles at the north-west, south-west, and near the south-east corner of my property and guy cables at the north-west boundary of my property;  (see **EXHIBIT 104**).  Its wires over-hangs the southerly and westerly boundaries and guy cables at the north-west boundary of my property;  (see **EXHIBIT 104**). The authority for the presence of the DTE poles and wires at the south boundary of my property is in a 10/24/1912 Right of Way Agreement (**EXHIBIT 111**) written for Bloomfield Highlands subdivision (**EXHIBIT 101**). The authority for the DTE poles at the north-west corner of my property is **NOT IN** the **1912 Right of Way**, but MAY BE in whatever arrangement DTE had, that allowed for the provision of electricity to the Hadsell's family farmhouse in 1912 or in the 1920 Plat of Hadsell's Addition to Bloomfield Highlands Subdivision (**EXHIBIT 102**). There is **NO** express available written authority or agreement for the DTE aerial wires over the west boundary of my property in print.

20  Line Clearance under the DTE Circuit running through my property **BLMFD8882**, at the southerly and westerly border lines, comes under the supervision of the DTE Supervisor of Planning and Design, Mr Hammond, and all Refused Line Clearance Work ever filed by

DTE crews, DTE Line Clearance Contractors will be and should have been filed and/or available to Mr James M Hammond, as supervisor of regional planning.  However Hammond and DTE have no such reports of any refused work for my address, that was ever filed by any of its contractors, in the history of DTE including the dates of **11/12/1991 to 2/26/2013.**

21  DTE Line Clearance and Vegetation Management is funded completely by the State of Michigan, Public Service Commission, Free and Clear (verify with Michigan Public Service Commission 1-800-292-9555 -- Vegetation management.

22  DTE line clearance for its Circuit in Bloomfield Township, MI 48302 was done by Asplundh Tree Expert between 11/12/1991 and 12/31/2009 and by Nelson Tree in 2010 and by Davey Tree Expert in 2013.

**ATTORNEY LELAND PRINCE (P30686) ("PRINCE")**

23  Prince is a graduate of the prestigious Howard University School of Law, Michigan bar and has been licensed since **11/09/1979**, with **33.25** years of professional experience as of 2/5/2013, to his credit. http://gmhlaw.com/leland-prince/ (see **EXHIBITS 160, 184**) presents Prince, as a Real Estate Litigation Specialist, and as a U.S. Supreme Court lawyer. The High Court's people-staffed telephone number: 202-479-3000 says that **Prince (P30686) IS NOT**, and has **NEVER** been one of their lawyers.  http://articles.petoskeynews.com/2011-06-06/shade-trees_29627695  (**EXHIBITS 193**) provides additional proof that Prince is well educated and thoroughly versed on how to correctly read, understand, interpret and honestly use and apply **(1)** Property Legal Descriptions and Property Sections, Townships and Ranges like SECTYION 4, T02N, R10E, **(2)** Rights of Ways Agreements like the 10/24/1912 Right of Way Agreement **(EXHIBIT 111)** **(3)** and understands the concepts of Prescriptive

easements and how it works.

24   Attorney Prince, at all times, is under the Michigan Bar Lawyer's Oath, and the Federal

Court's Lawyer's Oath.(see www.michbar.org, and www.mied.uscourts.gov). in addition to

his memberships in the Black Lawyer's organization, the Wolverine Bar and the NAACP,

Prince is **barred from the inculcation and application of acts that <u>wantonly</u>** compromises

the rights of others to fairness, in matters of Justice and the courts, and through the

American Judiciary system; because these are the very principles that these organizations

abhor, and exist to stand, fight and operate against. Prince himself is a beneficiary of the

Vision of abolitionists, who established Howard University in order to provide for American

Blacks the Educational opportunities that the system and the United States Establishment

and constitution had denied them. Thus, Prince should know better, about oppression,

prejudice, bias and bigotry, and not easily and so readily drag **an innocent man** (Mr Joseph

Constant) into a United States Court of law, baselessly, without good cause, without

probable cause, and especially when it is to advantage at the expense of victim of crime,

Joseph Constant, his already super rich employer, the $26 billion DTE Energy Corporation

sitting on its $3.1 Billion in profits, and $10 Million in salaries and compensations to DTE

EO. Mr Gerard Anderson as of 2/5/2013 (See **EXHIBIT 149, 150**).

## DTE EMPLOYEE AND SUPERVISOR, MR. JAMES M HAMMOND ("HAMMOND")

25   Mr Hammond has been employed by DTE Electric for around 30 years (see **EXHIBIT 201**),

and on 2/26/2013 was a supervisor of Regional Planning, in charge of the design,

construction and maintenance of DTE Electric distribution and sub-transmission lines. (See

**EXHIBIT 7, pp. 10-11**).

26   By virtue of his position at DTE  Hammond should be well and thoroughly versed with at

least basic surveys, the readings and interpretations of Rights of Ways and Legal

Descriptions, property metes and bounds,  nomenclatures of **Sections, Townships, Ranges**

and have access to ALL original DTE records such as Incident reports relating to Line

Clearance and DTE Equipment maintenance, **DTE Contractors' filed, refused line**

**clearance work by homeowners,** Problem jobs reports, and refused access to properties to

DTE crews and DTE line clearance and Equipment maintenance contractors, completed and

all non-completed line clearance and Equipment Maintenance Reports. The exact dates,

crew members, DTE contractors,  and work orders that DTE has scheduled to take place at

the property address of 49 Highland Drive, Bloomfield Hills, MI 48302-0355, and at least

related to their Power lines, on all or most of the dates **(11/12/1991 and 2/26/2013),** and

most especially, the particular date of **11/11/2010**

27  Mr Hammond sub-ordinates or immediate colleagues are DTE Arborist, Mr Gary

Christensen, Mr Robert Blacksher, DTE Rights of Way Facilitator, Ms Darcy Stein, and Ms

Peggy Sorvalla. Mr Hammond's supervisor on 2/5/2013 was Mr Edward Halash.

28  Mr Hammond, also by virtue of his position at DTE should be able to have access to **official**

**records** of DTE customers' contacts to the DTE central point of contact for all its customers,

800-477-4747 for all problems and the notes maintained on the customer, by DTE customer

Services.

## MR JOSEPH CONSTANT ("CONSTANT"

29  In addition to what has been said about Mr Constant under "PARTIES", Mr Constant, **on**

**11/12/1991,** became the owner of 49 Highland Drive, Bloomfield Twp., MI48302-0355 **in**

the 1920 platted Hadsell's Addition to Bloomfield Highlands Subdivision. The south border

of my property is the same as the north border of the 1912 platted Bloomfield Highlands

Subdivision, (see **EXHIBITS 101, 102, 103, 104, 105, 106**) and became a DTE electricity

Services Customer on 2/23/1993

**30** The legal description of my property, as, in **EXHIBITS 115, 116, 102, 104,** reads from

**EXHIBIT 115** as follows:

> "T2N, R10E, SEC 4 HADSELL'S ADDITION TO BLOOMFIELD
> HIGHLANDS LOT 4, ALSO 1/2 OF THAT PART OF VAC LAKE PLACE
> RD DESC AS BEG AT SE COR OF LOT 4, TH N 09-52-00 E 142.44 FT, TH
> ALG CURVE TO LEFT, RAD 30 FT, CHORD BEARS N 39-34-08 W 45.43
> FT, DIST OF 51.53 FT, TH S 84-34-53 E 116.76 FT, TH ALG CURVE TO
> LEFT, RAD 30 FT, CHORD BEARS S 57-02-50 W 44.09 FT, DIST OF 49.52
> FT, TH S 09-52-00 W 141.15 FT, TH S 88-33-00 W 50.54 FT TO BEG 11-10-
> 05 CORR".

## FACTS - HISTORY OF DTE ACTIVITIES AT, OR NEAR MY PROPERTY SINCE 11/12/1991

**31** Between 11/12/1991 and approximately 12/31/2009, Asplundh Tree Experts ("Asplundh")

was the DTE line clearance contractor, that conducted line clearance (Tree Trimming,

cutting and removal), about every **three(3) years,** beneath its wires at the north boundary of

the 1912 platted Bloomfield Highlands subdivision (**EXHIBIT 101**), which is the same as

my south property line. Asplundh never approached these portions of the DTE lines from my

property but from 124 N. Berkshire Road, Bloomfield Twp, in Bloomfield Highlands

Subdivision. There is an old farm metal fence between my lot and Bloomfield Highland

Subdivision and **NO** vehicle has ever gotten across this fence.. DTE's 1912 Right of Way

Agreement(**EXHIBIT 111**) is over the 1912 platted Bloomfield Highlands Subdivision

(**EXHIBIT 101**) My property is **NOT** in the 1912 platted Bloomfield Highlands subdivision

but in the 1920 Hadsell's Addition to Bloomfield Highlands Subdivision, and therefore **NOT**

subjugated by the 1912 Right of Way Agreement (**EXHIBIT 111**) Equally, Asplundh has

never sought to park its vehicles any where on my property on any reasons whatsoever.

Asplundh never ventured unto the West side of my property to conduct any line clearance

because there were no trees at this side of my property, and hence, Asplundh could not have trimmed what was not there in the first place. See **EXHIBIT 108** – 1995 Mortgage Report of my property.  All the trees presently there were planted by me, beginning in 1998.

32  **On 2/23/1993, I started** to take electricity services from DTE, account no ******016. Since that date, DTE have come unto my property under **MPSC C5.4** to connect, install, upgrade, replace, read its meters (almost every month), restore downed wires and repair my appliances (under an Appliance Repair agreement I had with DTE.) The **TABLE** below lists all the verified dates that DTE was on, or near my property and the corresponding activities that it accomplished between **11/12/1991 to 2/5/2013.**

| NO | DATE | DESCRIPTION |
|----|------|-------------|
| 1 | 2/23/1993 | Extend electric service to 49 Highland Drive, Bloomfield Township, Michigan 48302-0355. |
| **2** | **2/23/1993** | **Installed New Service Meter** |
| 3 | 2/23/1993 to 2/5/2013 | DTE conducted monthly **Manual or Remote** Meter Readings for its Electricity Services at my house, under MPSC C5.4 |
| 4 | 1992 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 and 154 Berkshire Road in Bloomfield Highland Subdivision |
| 5 | 1995 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 and 154 Berkshire Road in Bloomfield Highland Subdivision |
| 6 | 1998 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 and 154 Berkshire Road in Bloomfield Highland Subdivision |
| 7 | 2001 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 |

and 154 Berkshire Road in Bloomfield Highland Subdivision

| | | |
|---|---|---|
| 8 | 2004 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 and 154 Berkshire Road in Bloomfield Highland Subdivision |
| 9 | 2007 | Line Clearance activities at the South Border of my property, accessed by DTE Line Clearance Contractor Asplundh Tree Expert from 124 and 154 Berkshire Road in Bloomfield Highland Subdivision |
| 10 | June 2010 | Line Clearance: DTE trimmed the tree at the northwest corner of my property and Highland Road. DTE Accessed the Tree fro Highland Road |
| 11 | August 2010 | Line Clearance activities at the South and west borders of my property: Accessed by by DTE Line Clearance Contractor Nelson Tree Service from 124 Berkshire Road in Bloomfield Highland Subdivision, and later from 49 Highland Drive, Bloomfield Township, MI 48302-0355 |
| 12 | 2003 | Restore of the DTE wires to my house from the DTE pole at the South-west corner to the south-west corner of my house |
| 13 | 2009 | Electric service shut off for non-payment of bill in 2009 |
| 14 | 2009 | Electric Service re-connection after DHS payment was made in 2009 |
| 15 | 10/14/10 | DTE Employee, Darcy Stein inspection of the trimmed trees on my premises that I complained about on 9/21/2010. See **EXHIBIT 125** |

## APPLIANCE REPAIR COMPLETED BY DTE ON MY PROPERTY

| | | |
|---|---|---|
| 15 | 5-25-2004 | Water heater repair |
| 16 | 10-25-2005 | Furnace repair |
| 17 | 8-11-2006 | Water heater repair |
| 18 | 8-22-2006 | Water heater repair |
| 19 | 10-28-2006 | Water heater repair |

| No. | DATE | THE DTE ENERGY EVENTS LOG 6/9/2010 to 7/25/2012 RECAPITULATED |
|---|---|---|
| 1 | 06/09/10 | Tree trimmed at north west corner property. Customer is upset about condition of the tree after trimming |
| 2 | 08/18/10 | Customer states we cut down tree 7 years ago and one has grown again from pole to pole. Customer thinks the tree will come down on the wire |
| 3 | 08/17/10 | Does not want DTE to Cut trees on property, DTE shredded branches and trees he was using for winter to burn for wood. Trees were cut 30 feet to the property, not just the tree that were interfering with the lines. Wants trees replanted that were cut down |
| 4 | 08/17/10 | (Nelson Tree trimming Service) does not want anyone cutting trees while he is not at the residence |
| 5 | 09/21/10 | **Tree Trim Complaint.**<br><br>Customer not satisfied by the trimming done by Nelson Tree trimming. He believes trees were trimmed too much and customer would like the trees replaced and would like to speak directly with the tree trim supervisor |
| 6 | 10/24/10 | Bird or animal is causing transformer pole. Saw a bright flash. Saw something hang from pole boom bang explosion |
| 7 | 7/21/2012 | **Tree Trimming**<br><br>Trees are growing into P-P line |
| 8 | 7/24/2012 | **Tree Trimming**<br><br>Broken limb on a wire at South west corner to N.W.. Corner. Trees are growing into wire |
| 9 | 7/24/1012 | **Tree Trimming**<br><br>Transformer on Pole has a hole in it and tree branches have grown through the hole |

| | | |
|---|---|---|
| 10 | 07/25/12 | **Bell wire OK AO** |
| | 09/20/10 | DTE supervisor sent to instruct the Nelson Tree Service crew to stop work on my property on 9/20/2010 but arrived too late after the Nelson Crew have completed the trimmings of my trees at the West-side of my property, after 1:00 PM |
| | 10/14/10 | DTE Right of Way Facilitator, Darcy Stein's Trip To My House See **EXHIBITS 125, 126** |
| | Sept/Oct 2010 | DTE Employees, Robert Blacksher, Gary Christensen meeting with me on my property |
| | **Before 2/5/2013** | **DTE upgraded service meter for Remote Reading** |

33  In each year that DTE performed line clearance in my subdivision, DTE sent ahead, letters about the up-coming scheduled line-clearance event to residents including me and placed card notes to that effect at the front door of my house **(See EXHIBITS: 117, 118, 119, 120, 121, 122, 123).**

34  In a press release dated **11/12/2009, EXHIBIT 121,** "DTE Announces Tree Trimming Schedule, Line Clearance program improves electric services reliability" and in **June 2010,** DTE by its contractor, Nelson Tree Services **("Nelson")** trimmed a Mulberry Plant at the North-West corner of my property, and I complained about the excesses of this trimming to both DTE 1-800-477-4747 customer services under DTE account 189243000016, and with MPSC. The records of this complaint and the response from DTE is on the records at the DTE customer services logs, the DTE mailed claims form **(EXHIBITS 148)** and with MPSC for 2010 **(See EXHIBITS 187).**

35  In the summer of 2010 the Nelson Tree Service Company ("Nelson") replaced Asplundh, as

the DTE line clearance contractor for the DTE circuit (BLMFD8882) at the north-borders of

Bloomfield Highlands Subdivision, which is also the south border of my property in

Hadsell's Addition to Bloomfield Highlands Subdivision. Like its predecessor line clearance

contractor, Asplundh, I saw the Nelson crew and trucks parked on Berkshire Road, south of

my property, in Bloomfield Highlands Subdivision which is, within the territorial

jurisdiction of the DTE 1912 Right of Way Agreement (**EXHIBIT 111**).  But in early August

2010, two members of the Nelson crew came unto my property, and knocked at my front

door and asked for my permission to park their truck and Chipper at the east end of my yard,

which had a fairly hard surface but in the woods. They said that Highland Road is not that

wide and they often have trouble with the Police if they parked their trucks on fairly narrow

roads like Highland Drive for long periods of extended hours. I told them no problem, that

its OK by me. They offered to chip away several broken limbs of trees on my property, but I

told them not to do that, because I use the wood to help heat my home in the winter time.  I

told them that it was OK, for them to park their Trucks on my premises at the est side.  But, I

pointed out to them some **Poplar** trees that, I had growing at the south half of my property,

near the west border.  They recommended that I remove them completely as the trees can

become a problematic for me, as there are too near the neighbor's house and the DTE power

lines. They offered to cut them down completely for me, and as a gesture for me, letting

them park their vehicles on my premises, and agreed.

36  The Nelson crew stayed for at least a week, but then left in the same month to respond to a

major storm damages in New York State, and returned close to or around mid-September

2010 and continued from where they had left off, with their trucks once again parked at the

east side of my property.

37  On 9/21/2010, Nelson concluded its work on my premises and nearby lots, and for the first-time ever in DTE's history and my presence and ownership of 49 Highland Drive, Bloomfield Hills, MI 48302-0355, extended DTE line clearance activity to the West side of my property where DTE have no express Right of Way for line clearance and have no Prescriptively established Right of Way for Line Clearance over my property. Nelson had trimmed, cut several of my evergreen spruces by as much as 7 feet from the leads. I drew this action to DTE's notice, as DTE does not have express rights for line clearance or had acquired any, by usage, prescriptive activities, or adversarial conduct of line clearance over a period of at least 15-years, under Michigan requirements for adversary possession rights can be claimed by DTE. DTE dose not have one second in time of line clearance at the west side of my property, let alone, 15 years and could not have had such, because the area was devoid of trees, and every tree there, I planted it, beginning after August 1998, and DTE would not have had any basis for line clearance activity, beneath its wires in a tree-less parcel of land. **EXHIBIT 108** shows what the west side of my property looked like in 1995 which is completely barren of trees.

38  In response to my complaints of the DTE **9/21/2010** trimming of my trees, DTE Supervisor of Regional Planning Mr James M Hammond sent his sub-ordinates, Mr Gary Christensen, and Mr Robert Blacksher to go to my property and assess the damages to my trees.

39  **On 10/14/2010, DTE Right of Way Facilitator, Darcy Stein** came unto my property, all the way to the back, south-side and west sides regarding the 9/20/2010 DTE trimmings of my plants at the west side of my property, where DTE had no line clearance easements. Stein discussed this trip in her letters to me, in (See **EXHIBITS 128, and 130**).  I was not home when Ms Stein, came to my yard, and only gained the knowledge in her letter

40  Because DTE had no express right of Way to conduct line clearance beneath the DTE wires at the west side of my property, and have no history of established prescriptive easements activity over my property, DTE Attorney, Mr Michael J Solo (P57092), joined by Mr James M Hammond, and DTE Attorney Gary Kravitz (P49398) around and/or aware, reached out to me, on 12/21/2013 or 12/28/2010, in a multi-way telephone call and made an offer to settle DTE's unlawful trimming of my plants at the west side of my property and **propose** a plan that will manage the co-existence of the DTE wires at the west side of my property and my evergreen trees: The DTE telephone offer summarizes as follows: (see **EXHIBIT 139, 140** -- Draft Agreements):

  (1.)  DTE will plant one row of Arborvitaes at the west side of my property

  (2.)  DTE will vacate its easement at the east side of my property which it had never used since 1920[12]

  (3.)  DTE will replace its current 1942 installed poles at the north-west and south-west corners of my properties with higher poles, of an additional 5 feet higher.

  (4.)  Joseph Constant grants DTE. Approximately 5 feet wide easement at the west side of his property

41  I told DTE that in addition to the above offer, DTE is to add the below listed: (see **EXHIBIT 139, 140** – Draft Agreements)

  (1.)  DTE plants for me, a total of three rows of Arborvitaes staggered, instead of 1 row

  (2.)  DTE will help me relocate my fairly young Norway spruces from the west side

---

12  I later found out that DTE no longer has this easement, because DTE had never used it since 1920, when it was first designated as part of the 1920 platting of Hadsell's Addition to Bloomfield Highland s Subdivision, and besides, the public Road that the easement was linked to has long been abandoned, by the Road Commission and Vacated by the Township of Bloomfield and assigned to adjoining property owners. Moreover, DTE has no usable easement there because there is a Township Sewer lines in the location and DTE does not have room to be installing any poles for above grade wire or room below grade to bury its cables, as it must stay at least 16 feet away from the public sewer line on either side. In short, DTE had no real measurable tangible chips for transactions here.

of my property to other locations on my property.

(3.)   DTE pays me $16,000 cash for 177.1ft x approximate 5ft wide easements, straddling the west border of my property. This amount is compatible and measures with what International Transmissions was paying home-owners in neighboring Pontiac for line clearance easements rights.

42  I subsequently drafted the proposal (**EXHIBIT 139**) and mailed or emailed it to DTE attorney Mike Solo.  I did not hear from DTE thereafter. In the fall of 2012, I telephoned and spoke with DTE Attorney Gary Kravitz to inquire on the status of the agreement. After berating me, for ranting about the DTE trimming of my evergreens at the west side of my property, Mr Kravitz asked that I re-send him the Draft Agreement, which I did (See **EXHIBIT 139**). Again I followed through, with Mr Kravitz on where things stood. Mr Kravitz said that he had received my communication and forwarded it to Mr James M Hammond. When I contacted Mr Hammond, Mr Hammond said that he no longer worked in the area. So I requested to speak with his boss, whom he said, was Mr Edward Halash, Manager of Planning. Mr Hammond did not disclose, or provide his boss telephone number to me. and instead passed on my number to him. Mr Halash would later telephone me and said that he was never previously aware of this matter and requested that I send him, the Draft Agreement, which I did (See **EXHIBIT 139**). Mr Halash also telephoned me and said that DTE is unwilling to vacate its easement at the east-side of my property for good, and that DTE is willing to vacate it for something like 30 or 33 years and after that, they will get it back. DTE estimates that 30/33 years is plenty of time for me to enjoy the use of my property. easements free, before my life on earth expires, and its of course, DTE is guaranteed to continue its, to the end of earth.   I told him absolutely **<u>NO</u>** (in reality DTE has no easements at the east side of my property to be negotiating with. See **footnote 8**).

43  In July 2012, about 6 months before DTE filed its lawsuit against me on 2/5/2013, I
voluntarily called the DTE Customer services Telephone line of **800-477-4747**, and reported
to them, that I have observed a tree limb growing through a large hollow metal box anchored
on their pole at the north-west corner of my property and the public road, Highland Drive. A
record of this call can be verified in the TE permanent customer services contact logs, at
800-477-4747, for DTE customer Joseph Constant, Account No *****016, property Address
of 49 Highland Drive, Bloomfield Hills, Michigan 48302-0355. In response, DTE sent out a
specialist, **Jerome** with field telephone number: **734-368-8047** and upon inspection issued a
"**VERDICT**" on a card (see **EXHIBIT 99**) left at my front door knob that, the tree that I
was concerned about, posed no danger or treat to DTE, and will be <u>considered</u> for trimming
during their next scheduled line clearance event, which according to the DTE System
improvement Map **EXHIBIT 98**, would have been in 2013.  The actual verbiage of the DTE
"**VERDICT**" reads as follows:

> **"The tree that you are concerned about do not pose an immediate
> threat to safety or electric services". We will schedule these trees
> for trimming as part of our regular maintenance program"**

44  In General, between 9/20/2010 and 12/31/2012, I had several phone conversations and
exchanged several emails (**EXHIBITS 134, 135, 136, 137, 138, 139**) between, DTE
attorney Michael J Solo ("Solo") (**EXHIBITS 140, 141**), Gary Kravitz ("Kravitz") (see
**EXHIBITS 162**), DTE supervisor, Mr James M Hammond (see **EXHIBITS 134, 135, 136,
137, 138, 139**) and Halash (**EXHIBITS 131, 132, 133**). Mr Hammond once shared a story
with a very sad ending, of how a young lad had, most unfortunately used a tree to access
DTE wires and was electrocuted, leaving only a pair of shoes. Hammond also discussed
much with me, about trees in general, during which he shared knowledge of why it is not a
good idea to plant trees that spread very wide within x number of feet of power lines.

Clearly These emails speaks for themselves and does not support or reflect an aggrieved DTE by the supposed actions and conduct of Mr Constant, which supposedly had left DTE unable to complete line clearance though 2/5/2013, harmed and jeopardized its electricity services and supply, and left the lives of hundreds of its customers at the point of death, beyond any remedies of the law.

45   Between 11/12/1991 and 12/31/2009, ASPLUNDH Tree Expert CO ("Asplundh)"performed line clearance (Tree Trimming, cutting and removal), about every **three(3) years** for DTE, beneath its lines at the north boundary of Bloomfield Highlands subdivision, which is the same as my south property line. Asplundh never approached these portions of the DTE lines from my property but from 124 N. Berkshire Road, Bloomfield Twp, in Bloomfield Highlands Subdivision. There is an old farm metal fence between my lot and Bloomfield Highland Subdivision and there is NO practical way to get any tree trimming vehicles to these lines from anywhere on my property, and besides the authority to access these lines, is in the 1912 Right of Way Agreement over Bloomfield Highlands subdivision (**EXHIBIT 111**).

## THE DTE LAWSUIT

46   Consistent with its 1/24/2013 email declarations (**EXHIBIT 127, 128**) that it, DTE does not pay cash for easements, DTE on 2/5/2013 launched a pre-emptive legal strike against me, in a fraudulent move and bid to gain control of property easements rights over my property for its line clearance program (the activity of cutting, trimming and removing trees around power liens), without paying me cash for it, filed suit, in the 6th. Circuit Court of Oakland County, Michigan, (see 6th Circuit Court of Oakland County, Michigan, Case No. 2013-132055-CH, *DTE Electric v Joseph Constant* **Dockets/EXHIBIT 1, 5, 7, 74**). DTE laced its complaints with a litany, catalog, and barrage of lies, falsified, fraudulent and dishonest

33

statements, renditions and claims, with absolutely <u>no meritorious probable cause</u>. It sought from the Courts, the reliefs of **(1)** a Judgment of Prescriptive Easements over my property, **(2)** an Order of Permanent Injunction against me, and **(3)** an Order of Preliminary Injunction against me. A summary of the complaints are pretty much as follows: (see also **EXHIBITS 1, 5, 7, and 74**):

**(1.)**   That I have prevented, blockaded, impeded, obstructed, DTE and its contractors from access to, and entering my property at 49 Highland Drive. Bloomfield Hills, Michigan, 48302-0355, since I took ownership of my property, in 1991, to conduct DTE business. And that the last time, I held its people at bay, was **11/11/2010**.

**(2.)**   That I am the owner of property legally described as **Section 4, T2 N, R10E** and that my property is legally described as **Section 4, T2 N, R10E**.

**(3.)**   That my property is located in the 1912 platted Bloomfield Highlands Subdivision, instead of the 1920 platted Hadsell's Addition to Bloomfield Highlands.

**(4.)**   That DTE has a legitimately acquired Express easement rights over my property, pursuant to the DTE 1912 Right-of-Way Agreement, and the history of activities that it had conducted since 1912 over the 1912 platted Bloomfield Highlands Subdivision, coupled with MCL 560.190 Michigan's Subdivision Control Act, gave it, authority to use its expressly procured, and prescriptively established easements over the 1912 platted Bloomfield Highlands subdivision and over My property in the unrelated 1920 platted Hadsell's Addition to Bloomfield Highlands Subdivision..

**(5.)** That, as a result of my hostile conduct and actions against it, since I purchased my property on 11/12/1991 to 2/5/2013 **(a)** DTE, had been unable to conduct or complete line clearance, and Equipment Maintenance on its circuits **BLMFD8882** running along the south and west borders of my property, and bottom-line, there were dangerous untrimmed trees on my premises in contact with its wire at the south and west borders of my property, were it has power lines, **(b)** DTE equipment and services had become harmed, degraded, rendered unsafe, jeopardized, threatened, guttered and was at virtually, irreparable levels and pretty-much beyond recovery and **(c)** the lives of hundreds of its customers, including mine (Mr Joseph Constant's) faced the inevitable, imminent and irreversible permanent deaths, beyond any remedies of any law.

**(6.)** That, there were untrimmed trees on my property were it has legitimate easements and these untrimmed trees had endangered, harmed, jeopardized, threatened, and degraded the electricity reliability levels on the DTE lines, and placed the lives of hundreds of its customers including mine in danger of irreversible finality of deaths.

**(7.)** That, the last time I interfered with DTE's easement rights over my property and refused to allow DTE to access my property to trim and cut trees make repairs and replacements that are necessary for the safe and efficient delivery of electricity to me, and other residential and commercial customers in the area, thus preventing it from completing its line clearance reliability and improvement program, was on **11/11/2010.**

(8.) That **MPSC 460.3505**, **C5.4**, and **MCL 560.190(d)**, empowered DTE to conduct line clearance and equipment maintenance over my property at 49 Highland Drive, Bloomfield Hills, MI 48302-0355.

(9.) And because of the above reasons, DTE was asking the Courts for three immediate reliefs: **(1)** A Judgment of Prescriptive Easement against my property **(2)** An order of Permanent Injunction against me, **(3)** An Order of Preliminary Injunction against me.

## MY RESPONSES TO THE DTE LAWSUIT

47   The discussions from **FACTS, BACKGROUNDERS, DTE ELECTRIC. A.K.A. DTE ENERGY, DETROIT EDISON ("DTE"), DTE Attorney Leland Prince, DTE Employee, Mr James M Hammond are** incorporated here by reference as if fully present.

48   **FIRSTLY**, and upon receipt of the DTE lawsuit, and after multiple reading of it, I quickly realized that the lawsuit was a complete, premeditated, pre-planned deliberately scripted and orchestrated scheme to deprive, and defraud me, of easements rights over my property without paying me, for it and with a Michigan Court Order. Hence, I quickly picked up my phone and telephoned the DTE attorney on the Complaint, Mr Leland Prince and told him in a very forceful manner that he had 24 to 48 hours or so to return to Court and withdraw the Lawsuit. Prince said that he will do no such thing, and that he is fully aware of whats in my file at DTE

49   **SECONDLY**, I responded to the DTE lawsuit as required in court across several documents and Affidavits, and in them, denounced **ANY** credibility to the DTE Court claims, and asserting unequivocally that DTE had filed the lawsuit with criminal intentions, in utter bad faith, for the sole purposes of stealing from me, and defrauding me, of Real Estate Easement

Rights over my property at 49 Highland Drive, Bloomfield Hills, MI 48302-0355 with a Michigan Court Order and without paying me, cash for it. (see **DOCKET/EXHIBITS 10, 11, 12, 13, 14, 15, 16, 20**)

50   **THIRDLY**. I filed complaints in dozens of...... and with dozens of supporting documents of Evidence, with The Michigan Attorney General, Oakland County Prosecutor, Oakland County Sheriff, Farmington Hills, Police, and The City of Detroit Police alleging that DTE had filed in bad faith, a fraudulently motivated and driven lawsuit and Complaints in Court for the purposes of defrauding me, of property easement rights for Line Clearance, had made several false, dishonest, untruthful statements and claims in them, and along with it filed a very highly falsified Affidavit of Mr James M Hammond, and that the Affidavit of Hammond, which attested under Oath that the DTE court claims were truthful, to the best of his knowledge and information available to him, was of Criminal Conduct and was deliberately made and laced with falsifications in order to create authority for the Courts to grant DTE control of easements rights for line clearance over my property without paying me cash for it, and that the genesis and origins of the DTE lawsuit is linked to a failed negotiation between me and DTE, which DTE was now trying to make it happen their way, with a Michigan Court Order.   I requested that Hammond be investigated and charged with the Appropriate crime. My complaints to these law enforcement units are pretty much an echo of my court filing, in **DOCKETS / EXHIBITS 10, 11, 12, 13, 14, 15, 16**). The law enforcement units, one by one abrogated and shifted responsibility. (see **EXHIBITS 176, 177, 178, 179**) and are as follows:

    (a.)   The Michigan State Attorney General, Bill Schuette, shifted responsibility
          to the Oakland County prosecutor, (see **EXHIBIT 176**)

    **(b.)**   The Oakland County Prosecutor, Jessica R Cooper, office **said by**

telephone that they do not take reports from citizens, they do not conduct investigations, and they get all their complaints from the Police. Hence, they cannot act on my complaints.

(c.) The Oakland County Sheriff, Michael J. Bouchard's office, responded by Deputy Sheriff, Mike McCabe, and said that the matter is in the Courts and that it is a civil matter and the Courts will decide if the Affidavit of Mr James M Hammond is a crime or not (**see EXHIBIT 177**).

(d.) The City of Farmington Hills Michigan, Manager, Steve Brock. Said that I have no proof that the Affidavit of Mr James M Hammond was made in their city. (see **EXHIBIT 178**).

(e.) The City of Detroit, Police Department under the superintending control of Detroit Mayor, Mike Duggan, privately acknowledge, from the details of my reports, that it appears that DTE was trying to rob me of rights over my property, using the power and muscle of the Court, but did not do any thing after that. (see **EXHIBIT 179**).

### THE EVIDENCE AGAINST THE DTE COURT CLAIMS BY DOCUMENTS

51  The EVIDENCE against DTE are Two-parts: Documented Evidence, and EVIDENCE by Conduct. The documented EVIDENCE are **EXHIBITS 98, 99, 143, 145, 200., and are discussed as follows:**

52  <u>**EXHIBIT 99 – THE DTE VERDICT of 7/25/2012**</u>:

(1.) In July 2012, about 6 months before DTE filed its lawsuit against me on 2/5/2013, I voluntarily called the DTE Customer services Telephone line of **800-477-4747**, and reported to them, that I have observed a tree limb growing through a large hollow

metal box anchored on their pole at the north-west corner of my property and the public road, Highland Drive. A record of this call can be verified in the TE permanent customer services contact logs, at 800-477-4747, for DTE customer Joseph Constant, Account No *****016, property Address of 49 Highland Drive, Bloomfield Hills, Michigan 48302-0355. In response, DTE sent out a specialist, **Jerome** with field telephone number: **734-368-8047** and upon inspection issued a "**VERDICT**" on a card (see **EXHIBIT 99**) left at my front door knob that, the tree that I was concerned about, posed no danger or treat to DTE, and will be <u>considered</u> for trimming during their next scheduled line clearance event, which according to the DTE System improvement Map **EXHIBIT 98**, would have been in 2013. The actual verbiage of the DTE "**VERDICT**" reads as follows:

> "**The tree that you are concerned about do not pose an immediate threat to safety or electric services**". **We will schedule these trees for trimming as part of our regular maintenance program**"

**(2.)** Clearly, the 7/25/2012 DTE **VERDICT**, decimates and denies credibility to the Court Allegations by DTE, DTE Attorney, Mr Leland Prince, and DTE Affiant, Mr James M Hammond, that there were untrimmed trees on my premises that **posed "an immediate threat to safety or electric services"**.

## 53  <u>EXHIBIT 98</u> DTE SYSTEM IMROVEMENT (LINE CLEARANCE, & EQUIPMENT MAINTENANCE STATUS FOR 49 HIGHLAND DRIVE, BLOOMELD HILLS, MICHIGAN 48302-0355  (EXHIBIT 98):

**(1.)** The DTE website http://www.dteenergy.com provides links where **ANY** ONE at all, DTE customer or not, can type in, **ANY** DTE customer address, to ascertain the status of DTE Line Clearance and Equipment Maintenance completion status for that

address, and get a status report at any time. Accordingly,  at the onset of this case in 2013  I accessed the DTE site and typed in my own property address of 49 Highland Drive, Bloomfield Hills, Michigan 48302 and the results returned showed that DTE had completed all line clearance and equipment maintenance for the address, was current, up-to-date, in its line clearance duties, work, and obligations at, on, and for my address through 2010, for both Line Clearance and Equipment Maintenance, with the next scheduled Line Clearance date in 2013, and the next scheduled Equipment Maintenance date in 2012  (see **EXHIBIT 98**). The report contradicts and denies credibility to Attorney Leland Prince's (P30686) signed and Court filed statements and equally, Mr James Hammond's sworn Affidavit that the DTE statements were true, defaults to, and reduces to categorical Perjury,  and deliberate falsifications of facts, and information that is well known to the DTE, employee-supervisor, Mr James M Hammond.

**(2.)** It is uncontroverted that **EXHIBIT 98** denies **ALL** credibility to the DTE court claims against me, and imputes Perjury or its equivalent, and/or criminal conduct in the Affidavit of Mr Hammond, which had attested under Oath that the DTE court claims are true

## 54    EXHIBITS 143, 145 - DTE LINE CLEARANCE CONTRACTOR SUBPOENA RESPONSES

**(1.)**    The DTE contracts for Line Clearance have provision in them that require that whenever a home owner refuses DTE contractors access to their property for line clearance work, a Refused work Problem Job Report must be filed with DTE (see **EXHIBITS 175** - DTE problem Jobs).  Such reports, if any would have been available to the contract administrator and **available** and **known** to Mr James

Hammond, as Supervisor of Regional Planning and Design in charge of Line

clearance on the DTE Circuit, **BLMFD8882** that runs through the south and west

borders of my property at 49 Highland Drive, Bloomfield Township, MI 48302-0355.

The verbiage for this Provision found in the DTE **Contract No 40930500 effective**

**1/1/2005 through 3/1/2008,... 18 of 35, EXHIBITS 175** reads as follows:

> 'A problem job is defined as an event that prohibits the contractor from
> performing the task.(Examples: Customer Refusal, Job requiring
> protection by Edison  etc.) The contractor shall use all reasonable
> resources to resolve problem jobs. All unresolved problem jobs reports
> must be submitted on a form provided by Edison, with the contractor
> weekly time sheet, by the contractor. If Edison resolves the problem job
> within 15 business days after submittal, the contractor will perform the
> work and the cost will be included in the total cost of the contract. If
> Edison cannot resolve the problem within 15 business days, the
> contractor shall complete the work on Contract 408921 at T&M Rates."

**(2.)**   Pursuant to the above, and Court allowed discovery, on 7/9/2013, 7/10/2013,

7/12/2013, Judge Kumar signed the Subpoenas **DOCKETS / EXHIBITS 51, 52, 53,**

**55** for the three DTE line clearance contractors, Asplundh Tree Expert, Nelson Tree

Services, and Davey Tree Expert to appear in court with various official and original

documents listed in the subpoenas, and answer several questions related to the DTE

court claims against me, that included dates, crew names, that Mr Constant had

refused them access to his property, and the Refused access and uncompleted Job

reports created.

**(3.)**   The Subpoena responses from Asplundh, and Davey Tree Experts, **EXHIBITS 145,**

**145** all un-equivocally denies any credibility or truthfulness to the DTE complaint and

in the Affidavit of Mr James M Hammond. They all essentially say, that they had

never been refused access to Mr Constant's property by anyone, and they have never

had any instant of uncompleted line clearance along the DTE circuit running at the

borders of my property. Implicitly the Affidavit of Mr James M. Hammond that swore

under Oath that the DTE complains in Court fails as a credible oath. and in effect a

Perjury or its equivalent.

## 55   EXHIBITS 200 – ELECTRICITY RELIABILITY REPORTS.

(a.)   **MPSC Case No U-12270**: By an order of the Michigan Public Service Commission

In the matter, on the Commission's own motion, of the investigation into the methods

to improve the reliability of electric service in MPSC Case No U-12270, all utilities,

DTE included were ordered and required to file **annual reliability reports**. The link

to this case and the DTE filed annual reports from 2000 to date is at:

http://efile.mpsc.state.mi.us/efile/viewcase.php?

casenum=12270&submit.x=12&submit.y=9. (See **EXHIBITS 200**).

(b.)   **MPSC Case No U-16065**: **Also by an** order of the Michigan Public Service

Commission, In the matter, on the Commission's own motion, to require THE

DETROIT EDISON COMPANY to provide electric power reliability information in

its annual power quality report MPSC case No: U-16065, DTE filed annual Power

Quality report which has **reliability indexes** data included.  The link to this case and

the DTE filed annual power quality reports from 2000 to date is at:

http://efile.mpsc.state.mi.us/efile/viewcase.php?

casenum=16065&submit.x=15&submit.y=13.  (See **EXHIBITS 200**).

(c.)   Since year 2000, DTE have complied with the Commission's orders, and filed the

required reports. These reports included here as **EXHIBITS 200** affirmatively and

unequivocally deny that the dangerous, threatened, jeopardized, unsafe electricity

reliability and power quality levels, alluded, claimed, insinuated, as having issued, or

on the verge of further issuance on the DTE circuits serving Mr Constant's house, in

Bloomfield Township, Circuit No BLMFD8882 for the period 2000 to 2/5/2013,

which DTE alluded, to have been caused by Mr Constant's consistent, persistent,

refusal to DTE and its crews and contractors access to his property for DTE to

maintain its equipment, and conduct and complete line clearance, existed, ever

existed, or was imminent from the data on the reports. In short, the utmost extremely

high levels of electricity reliability and power quality reported by DTE on the reports

contradicts the DTE court claims, and the Affidavit of Mr James M Hammond and

denies credibility to the representations of the two DTE legal documents filed by DTE

to the MPSC and the 6th Circuit Courts of Oakland County ad case 2013-132055-CH,

DTE electric v Joseph Constant.

## THE EVIDENCE AGAINST DTE BY PLAIN ENGLISH

**56  SECTION 4, T04N, R10E:**

(1.)   DTE Attorney, Mr Leland Prince (P30686) presented a claim in the DTE complaint,

that the legal Description of my property is **SECTION 4, T04N, R10E**, and that I

own the property legally described as **SECTION 4, T04N, R10E** and Mr Hammond

avowed in Oath that, the claim is true. (see **DOCKET/EXHIBITS 1. 5 and 7, pp 10-**

**11**).

(2.)   The 9th Edition of Black's Law Legal Dictionary describes a SECTION as

"A piece of land containing 640 acres or one square mile.  Traditionally, public lands in
the United States were divided into 640 acres squares, each one called a Section"

(3.)   The U.S. Government website,
http://nationalatlas.gov/articles/boundaries/a_plss.html#thre describes the particulars
of a section as follows:

**Range** — A vertical column of townships in the PLSS(The Public Land Survey
System (PLSS)

**Section**—A one-square-mile block of land, containing 640 acres, or approximately one thirty-sixth of a township. Due to the curvature of the Earth, sections may occasionally be slightly smaller than one square mile.

**Township**—An approximately 6-mile square area of land, containing 36 sections. Also, a horizontal row of townships in the PLSS. see **EXHIBIT 110**

**(4.)** The online Legal Dictionary http://legaldictionary.lawin.org/section/ describes a SECTION as:

"A division of land one mile square, containing six hundred and forty acres, established by the United States government survey of the public domain. See "Range;" "Section of Land;" "Township."

**(5.)** The Free dictionary http://www.thefreedictionary.com/section describes a SECTION as:

"A land unit equal to one square mile (2.59 square kilometers), 640 acres, or 1/36 of a township"

**(6.)** the Online dictionary http://dictionary.reference.com/browse/section describes a section:

"(in most of the U.S west of Ohio) one of the 36 numbered subdivisions, each one square mile (2.59 sq. km or 640 acres), of a township".

**(7.)** www.merriam-webster.com/dictionary/section defines a SECTION:

"A piece of land one square mile in area forming esp

**(8.)** http://en.wikipedia.org/wiki/Section_(United_States_land_surveying) defines a SECTION as:

"In U.S. land surveying under the Public Land Survey System (PLSS), a section is an area nominally one square mile, containing 640 acres (260 ha), with 36 sections making up one survey township on a rectangular grid.[1]"

**(9.)** Clearly, from the above numerous definitions, **SECTION 4, T04N, R10E** is

uncontrovertedly located on the map of the world, as that parcel of land that is

bounded by Square Lake Road at the South, Franklin Road at the West, South

Boulevard at the North, and Lasher Road extended at the East in Bloomfield Hills and

Pontiac City, Oakland County, Michigan. It is equivalent 1/6 of the entire Township of

Bloomfield, in Oakland Country,  Michigan USA. The property holds specialist

facilities like St Joseph Mercy Hospital, in Pontiac, Michigan, Bloomfield Township Fire Station, hundreds, if not thousands of homes, businesses, and vacant lands. Clearly such a parcel could not be owned by Mr Constant who have been proceeding through the Courts, in *forma pauperis*.  Hence, the sworn statement of Mr Hammond that Mr Constant is the owner of a property legally described as **SECTION 4, T04N, R10E** or that Mr Constant owns the parcel of land legally described as **SECTION 4, T04N, R10E** is a deliberate Falsehood, and categorical Perjury or its equivalent.

(10.)  Attorney Leland Prince, who wrote and signed the script for the DTE lawsuit, is a specialist in Real Estate Litigation. His own website says so, and other websites concurs (see **EXHIBIT 183, 186**). The Affidavit of Mr Hammond presented Hammond as a DTE supervisor, in charge of Regional Planning. Clearly Hammond has a thorough knowledge of Maps, Plats naming conventions for parcels of land. These portfolio and collective knowledge, alone, contests any absence of ill-will and bad faith in the DTE filings and sworn Affidavit of Mr James M Hammond, and asserts unequivocally that the Filings and the affidavit was completely made in bad faith, was fraudulently motivated, to agitate and confuse the Courts of Michigan and to defraud Mr Constant of property rights for line clearance easements purposes, to add to the wealth of one of the World's richest companies, DTE Energy, which is worth USD $26 billion on 2/5/2013 (see **EXHIBITS 149, 150**), without any probable cause.

## 57    THE DTE 1912 RIGHT OF WAY AGREEMENT ("ROW") (EXHIBIT 111):

(1.)  DTE Attorney, Mr Leland Prince presented a claim in the DTE complaint, that the DTE 1912 ROW AGREEMENT (ROW) (**EXHIBIT 111**) gave it authority over my property at 49 Highland Drive, Bloomfield Hills, MI 48302. And Mr Hammond swore

under Oath in his Affidavit that the claim is True. Well, Mr Prince's claim is deliberate falsehood, and Mr Hammond's attestation under Oath that the claim is true, is a deliberate Falsehood and a complete act of criminal conduct, and here are the reasons why:

(a.) The Plain language of the 1912 ROW **(EXHIBIT 111)** defines the <u>extents,</u> <u>scope</u> and <u>jurisdiction,</u> as over the 1912 Platted Bloomfield Highlands Subdivision (see **EXHIBITS 101**). My property at 49 Highland Drive, is not in the 1912 platted Bloomfield Highlands Subdivision but in the 1920 platted Hadsell's Addition to Bloomfield Highlands Subdivision **(EXHIBIT 102)**, and therefore lies outside the limits, scope, extents, and jurisdiction of the DTE 1912 ROW.

(b.) The establishment of Hadsell's Addition to Bloomfield Highlands subdivision has no relevance, obligation, ties or dependencies to the establishment of Bloomfield Highland Subdivision, and linked only in a shared name of "Bloomfield Highlands". Hence Mr Prince's claim and Mr Hammond's Affidavit defaults to deliberate falsehoods, and especially when it has been established that both Prince and Hammond are Experts on Real Estate metes and bounds, its readings and interpretations, and literacy.

## 58   DTE CLAIM OF PRESCRITIVE EASEMENT ACTIVITIES OVER MY PROPERTY FROM 1912-2013 IS DELIBERATE FALSEHOOD

(1.) DTE Attorney, Mr Leland Prince signed the DTE Court claim statement that the 1912 ROW allowed DTE to carryout DTE activities over my property since 1912 as described and permitted in the ROW. And that DTE had cut, trimmed and removed trees from underneath its wires at the West Side of My property. Hammond avowed

under Oath that the claims are True. Both Prince and Hammond, were dishonest for the following reasons:

**(a.)** My property which is in the 1920 Hadsell's Addition to Bloomfield Highlands subdivision (**EXHIBIT 102**) did not exist as a subdivision plot, and whatever activities that DTE carried out under the 1912 ROW pursuant to that ROW and within the Jurisdiction of that ROW, and MCL 560.190 is irrelevant to the preservation of a prescriptive easement claim, that supposedly arose out of a history of DTE activities on the 1912 platted Bloomfield Highlands Subdivision (**EXHIBIT 101**) over my subdivision, the 1920 platted Hadsell's' Addition to Bloomfield Highlands (**EXHIBIT 102**) by virtue of the same activities over any other subdivision, property or parcel of land, outside of the 1912 platted Bloomfield Highlands subdivision. Since my property in the 1920 platted Hadsell's Addition to Bloomfield Highlands Subdivision, is outside of the 1912 Bloomfield Highlands Subdivision, my property would not have been part of those areas that DTE carried out activities from 1912. Besides, why would DTE be extending Electric lines to non-existing homes in a non existing, yet to be platted 1920 Hadsell's Addition to Bloomfield Highlands Subdivision anyways? Because the DT E activities referenced were done over the 1912 platted Bloomfield Highlands Subdivision, and because Mr Constant's property is not in the 1912 Bloomfield Highland Subdivision, but is in the 1920 Hadsell's Addition to Bloomfield Highlands subdivision, the DTE claim must fails as credible and Hammond's Affidavit must fall with it as a credible Oath.

**(b.)** Mr Constant's property as a Subdivision LOT No 4, came about 8 years later in 1920 and there would have been no basis for DTE to have been extending its

wires to a non-exiting home-owner in a non-existing subdivision.  An application of the plain language of the 1912 ROW would fail to support that the DTE wires at the west side of my property,  came about from the DTE Application of a provision in the 1912 ROW, because the west side of my property lies completely outside of the 1912 ROW, in geography and jurisdictionally.  Both Mr Prince and Mr Hammond are experts at reading Right of Ways Agreements. Prince as a Real Estate Litigation Specialist and Hammond as the DTE official who overseas Power lines Right of Ways, the base for the power lines, without which DTE cannot install power lines.

(c.)  The 1995 Mortgage Report for my property shows that the west-side of my property was barren of Trees. Hence DTE could not have established any prescriptive easement claim by conducting line clearance over any portion of my property (see **EXHIBIT 108)**. No one can remove that, which is not there in the first place, DTE included. Therefore, Attorney Prince's signed claims must fail as credible and the sworn Affidavit of Hammond which attested that there were trees that DTE had historically trimmed, cut, and removed at the west side of my property must also fall and go down as a deliberate Falsehood., and categorical criminal conduct and Perjury.  All the trees that are at the west side of my property were planted by me in 1998 and some of the Arborvitaes reached heights that DTE contractor, Nelson Tree Services then trimmed a number of them on 9/21/2010. However, Nelson Tree denied responsibility before me and the DTE Arborist, Mr Gary Christensen ("Christensen"), claiming that I had requested them to trim the evergreen trees as part of the deal they had made with me, when they offered to cut down the Poplar trees at

48

the west side of my property, as a gesture for me allowing them to park their

trucks and chipper at the west side of my property, in August and September of

2010

**(d.)** On, or around 12/21/2010 or 12/28/2010, in a multi-way telephone

conversation, DTE attorney, Mr Michael J Solo(P57092), Mr James M

Hammond and Gary Kravitz(P 49298) in the background, reached out to me,

and offered to compensate me for the trees that Nelson had trimmed with a row

of Arborvitae tress and other terms(see **EXHIBITS 139, 140, 136, 137, 138)**.

Clearly, DTE would not have made this offer, if it had prescriptive easements

rights over my property on 9/21/2010, when its contractor, Nelson Tree

Services had entered my property to cut and trim my evergreens, where DTE

had no express or established prescriptive easement for line clearance.

## THE EVIDENCE AGAINST DTE BY DTE CONDUCT AND DTE IN-ACTIONS FROM 11/12/1991 TO 2/4/2013

59    The nature, cordiality, contents and spirit of the emails exchanges between Mr Constant and

DTE staff, Mr James M Hammond, DTE attorneys, Mike J Solo and Gary Kravitz,

**(EXHIBITS 130, 131, 132, 133, 134, 135, 136, 137, 138, 163)** does not support the

existence of the condition of a DTE, whose business, these men are the custodians of, that

have been aggrieved in any manner whatsoever, by the actions and conduct of Mr Joseph

Constant, and as scripted, written, rendered, claimed, signed, by DTE Attorney, Mr Leland

Prince (P30686) and sworn to under Oath, by Mr James M Hammond as the truth, and filed

in the State of Michigan 6th Circuit Court of Oakland County, as complaint at law, against

me, Mr Joseph Constant, in Case No.2013-132055-CH.

**(a.)** Mr Constant has had continuous electricity services from Detroit Edison, since

2/23/1993, with the exception of when services had been cut-off for non-payment of bills. So, this verifiable records and history of continuous electricity services clearly support the case that MPSC C5.4 - Condition for Taking Electricity Services (see **FOOTNOTE 8 of this complaint**) had never been violated and DTE Attorney Mr Leland Prince's signed complaint must fail as the truth and the Affidavit of Mr Hammond that attested, under oath, to its credibility must also fall with it as a credible Oath, as Hammond is in violation of MCL 723.423 -- Perjury or its equivalent.

**(b.)**   The DTE complaint alleged in the 6th Circuit Court of Oakland County, Michigan Case No 2013-132055-CH, in **Docket 1/ EXHIBIT 1**, that it, DTE,  had been refused access to my premises, to conduct DTE activities, since my ownership of my property on 11/12/1991. The DTE verbiage reads as follows:

> "Despite Plaintiff's lawful authority to access the property, Defendant has **consistently** refused to allow Plaintiff to trim trees that are growing into the easement, thus preventing Plaintiff from completing its line clearance reliability improvement program".

**(c.)**   Yet, while all these DTE alleged most terrible, most despicable, most life-threatening conditions existed, allegedly caused by me, to the extents of degraded, damaged, harmed, threatened and jeopardized DTE equipment. Electricity services, reliability and power quality levels, power lines, and hundreds of lives of its customers including mine, facing imminent, irreversible and finality of deaths **beyond any remedies of any law,** DTE waited a whopping **21 years, 2 months, 25 days** (11/12/1991-2/5/2013) to bring a lawsuit against me on 2/5/2013, to stop all the madness that I had allegedly caused it, with Michigan Court Orders, and come into compliance with MPSC regulation for line clearance,  and save its equipments, power